This was an appeal from a judgment rendered by the District Court of Brunswick, in favour of the appellee, against the appellants on an ejectment for 618 acres of land, lying in Brunswick County, on the following case, agreed by the counsel of the parties: On the 5th day of April, 1784, James Fisher, by his last will and testament which is duly made and recorded in the County Court of Brunswick, devised, among other things, as follows: “I give and bequeath to my loving son James Fisher the land below my Spring Branch, and the land I bought of Charles Gordon, and the land I bought of Mason Bishop, with the following negroes, namely: Ball, Sail, and all their children and their increase; with one feather bed and furniture; with half my mill to him and his heirs forever; and if my son James Fisher should die without a lawful heir, my will and desire is, that my grandson James Fisher, the son of Jonathan Fisher, may have the above mentioned lands and the half of the negroes, to him and his heirs forever: and the other half of the negroes, my will and desire is, that my grandson Benjamin Fisher, the son of William Fisher, may have to him and his heirs forever.”
*The testator died the same year, and James Fisher the son entered into the lands, and held them till he died in the year 1800, intestate, and without any child, and without ever having been married; whereupon the grandson James Fisher, the son of Jonathan Fisher, (and the present appellee,) to whom the lands were devised over in remainder, brought this ejectment against the appellants, who are the heirs at law of James Fisher the first devisee. The District Court gave judgment in favour of the remainder-man James Fisher the grandson, and an appeal was taken by the heirs at law to this Court.
Hay, for the appellants, considered this case as fully decided by the case of Hill v. Burrow, in this court, (a) The question presented by the clause of the will of the testator in this case is the same which arose in Hill v. Burrow. The devises are the same in substance, and almost the same in words: in that case, the limitation over was ‘ ‘in case my son Thomas Hill dies without a lawful heir;” in this, the limitation depends upon these words, and if my son James Fisher should die without a lawful heir:” the very words used by the testator, on the construction of whose will the case of Hill v. Burrow turned.
G. K. Taylor, for the appellee. Stare decisis is a rule which I hold in as much respect as any man in the Commonwealth; but there are cases in which it may be necessary to depart from it:
1st. When there have been decisions plainly contravening former decisions, the Court will not carry them further than imperious necessity demands.
2d. While the Courts, in deciding a case, will respect principles, they will pare down, by degrees, the authority of precedents till they are brought to the standard of common sense. As a proof of this, we may refer to cases decided in the time of Bord Coke and Bevinz, when the limitation of a chattel was not allowed; those limitations are now common.
3d. When there is a political change in a country which would render the original rule inconvenient, the Courts will not consider themselves bound by it.
If this case had arisen on a will made before the revolution, I should give up the subject as a desperate one. If it had been a decision on a case arising since the revolution, and a case of land only, after the case of Tate v. Tally, I should approach it with great trepidation, (b)
*If the Court will look at the will, they will find that the limitation of the lands is coupled with the bequest of the slaves and personal estate, and under the same deposing words. They will find that the same verb (have) governs three several nouns, lands, slaves, and personal estate. It is impossible to suppose that the testator meant to dispose of his real and personal estate differently. If it can be proven that this would be a good executory devise, as it relates to the slaves, then it would follow that the testator meant the same thing as to the lands.
Here I shall be opposed by the case so often resorted to of Forth v. Chapman, (c) and I admit that Bord Chancellor Parker said he would construe a will one way as to realty, and another as to the personalty. But he expressly says that he did it to effectuate the general intention of the testator. In the present case, the application of the rule will destroy that intention. If we attend to the statement of the case of Forth v. Chapman, we shall find that, if the Chancellor had not given that interpretation, the children could not have taken the land. Now, although the Courts will be astute to carry into effect the testator’s intent, yet surely they will not to destroy that intent. In the case of Forth v. Chapman an estate for life only was given in the first instance. The same principle which was adopted in that case is recog-nised in Sheffield v. Lord Orrery, (d)
If there were nothing in this case but what appears in Tate v. Tally, I should surrender the cause; but what I contend for, is, that, there is personalty involved in the same devise with the realty, which circumstances ought to give effect to it as an executory devise, and, as the Courts in England will construe devises as to realty and personalty differently in order to effectuate the intention of the testator, for the same reason the Courts of this country will not construe wills so as to defeat the intention.
[JUDGE ROANE observed, that the same doctrine had been contended for in Tate v. Tally; and JUDGE TUCKER declared that he could not distinguish this case from Hill v. Burrow, and Tate v. Tally.]
Mr. Taylor, perceiving that the opinion of the Court was against him, observed, *250 that he would not press the argument further.
Wednesday, November 18. By the whole Court, (consisting of JUDGES EEEMING, ROANE, and TUCKER,) the judgment of the District Court was reversed.
*JUDGE TUCKER expressed himself as follows: “Every point in this cause has been so fully discussed both by the bar, and the Court in the case of Hill v. Burrow, (a) (which I cannot distinguish from this, except as to the date of the will, which, in that case was antecedent to the act for docking entails), and in the case of Tate v. Tally, (b) as to preclude all further discussion upon them, without leaving the decisions of this court in a state of perpetual fluctuation. I am therefore of opinion that the judgment be reversed, and a judgment entered for the defendants in the ejectment.

 3 Call, 342.

 3 Call, 354.

 1 P. Wms. 667.

 3 Atk. 288.

 3 Call, 342.

 3 Call, 354.